**ACOUSTICAL DESIGN, INC.,**
**Plaintiff–Appellee,**

v.

**CONTROL ELECTRONICS COMPANY, INC., Insul–Art Acoustics Corp., Jack Leonard, and Harold Goldstein, Defendants–Appellants.**

No. 90–1296

United States Court of Appeals,
Federal Circuit.

May 1, 1991.

William L. Mentlik, Lerner, David, Littenberg, Krumholz & Mentlik, of Westfield, N.J., argued for plaintiff-appellee. With him on the brief were John R. Nelson and Roy H. Wepner.

Robert J. Eichelburg, Scully, Scott, Murphy & Presser, of Garden City, N.Y., argued for defendants-appellants. With him on the brief were William C. Roch and Stephen D. Murphy.

Before RICH, ARCHER and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Control Electronics Company, Inc. (Control), Insul–Art Acoustics Corp., Jack Leonard, and Harold Goldstein (collectively appellants) appeal the March 30, 1990, judgment of the United States District Court for the Eastern District of New York, Civ. No. 86–1692, holding appellants liable for infringement of appellee's patents and breach of contract, and enjoining them from further infringement of the patents. We affirm.

## BACKGROUND

On May 17, 1977, U.S. Patent 4,024,535 was granted to Harold Goldstein on a sound generator for a sound masking system. Goldstein assigned the patent to Acoustical Design, Inc. (ADI). U.S. Patent 4,185,167 was granted on January 22, 1980, to Donald R. Cunningham and James E. Sulewsky for a sound masking package. ADI also became the assignee of that patent. The inventions are for the purpose of masking disturbing background noise and permitting alternation between predetermined sound spectra.

ADI and Control had earlier agreed in 1976 that Control would be the exclusive manufacturer of the "Noise–Mask" product line, products covered by the two patents, and that ADI would have exclusive rights to market the product line. Control thus became a licensee of ADI. In 1982, ADI and Control further contracted that ADI would serve as Control's non-exclusive sales representative for sound masking devices, ceiling acoustical panels, acoustical banners, baffles, and related products. ADI and Control maintained this business relationship until late 1985, when, as a result of Control's failure to pay ADI commissions allegedly due to ADI under the 1982 agreement, the 1976 and 1982 agreements were terminated by ADI. Control continued to manufacture and sell the same sound masking devices it was previously licensed to manufacture notwithstanding the termination of the agreements.

Accordingly, on May 20, 1986, ADI filed suit for patent infringement and breach of contract in the United States District Court for the Eastern District of New York against appellants. The latter denied infringement and claimed that ADI's patents were invalid for lack of novelty, obviousness, and incorrect inventorship. ADI

moved for summary judgment as to the '535 patent based on the doctrine of assignor estoppel, on the theory that Goldstein, who was a defendant, principal of the corporate defendants, and in privity with Leonard, was the inventor named in the patent and therefore could not challenge the patent's validity. The district court denied the motion on the ground that a triable issue of fact existed.

In January 1990, the lawsuit was tried for seven days before a jury. Appellants attempted to invalidate the patents on the basis of lack of novelty in view of two items of alleged prior art: U.S. Patent 4,059,726, issued to Watters, and public use of an electrical circuit developed and manufactured by Radio Speakers of Canada, Inc. (the RSC circuit). At the close of all the evidence, appellants did not move for a directed verdict, nor did they object to any instruction to the jury related to an issue now on appeal.

The court submitted to the jury a special verdict form which contained questions relating to the issues in the case. The jury provided answers in appellee's favor to each of these interrogatories. Appellants did not move for judgment notwithstanding the verdict (JNOV) or for a new trial. On March 10th, the court granted appellee's renewed motion for an order finding that the doctrine of assignor estoppel should have precluded appellants from attacking at trial the validity of the '535 patent. The court subsequently entered final judgment for appellee and this appeal followed.

## DISCUSSION

■ The issue before us is whether this court should vacate and remand for new trial a judgment rendered on a jury verdict when no motions for directed verdict, JNOV, or new trial were made in the district court, and appellant has not demonstrated prejudicial legal error to have occurred in the conduct of the trial. We answer this question in the negative.

Rule 50(b) of the Federal Rules of Civil Procedure permits a motion for JNOV only when a party has previously moved for a directed verdict. No such motion was made here. When no motions for JNOV or new trial are made in the district court after a jury verdict, prejudicial legal error must be shown to have occurred in the conduct of the trial in order for this court to vacate the judgment of the district court and remand for a new trial. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1511, 220 USPQ 929, 934 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). We find no such error.

■ Appellants argue that the court erred "in not allowing a post-verdict Special interrogatory to the jury that if claim construction would result in invalidity of the claim, the appropriate conclusion is non-infringement." Appellants said they sought this interrogatory to learn whether the jury construed the claims of the patent to avoid the RSC circuit. We find no error in the court's decision.

The form of special verdict that was issued to the jury dealt very clearly with validity and infringement. The court instructed the jury on the law of patent validity and claim construction. Appellants did not object to any of those instructions then and they cannot challenge them here. *See* Fed.R.Civ.P. 51. The jury concluded that the claims in suit are not invalid; thus, appellants did not meet their burden of proving that the RSC circuit was invalidating prior art.

Appellants also argue that the court erred in holding that a dependent claim must be infringed when an independent claim is infringed. The record nowhere demonstrates that the court made this holding. We therefore view this argument to be without merit.

Appellants next argue that the trial court found by implication that the patent claims did not read on the prior art and that this finding is clearly erroneous. The court did not find this fact by implication; the jury answered special interrogatories stating that the claims of both patents were not invalid on the basis of lack of novelty. Thus, no implied finding of fact, as argued by appellants, was made by the court.

Appellants further argue that the court erred by preventing appellants' patent expert from testifying as to how claims are to be drafted to avoid prior art, and that the claims in suit read on the prior art. They assert that, without this testimony, appellants could not effectively demonstrate how applicable law would require findings of non-infringement and inequitable conduct by appellee.

Admission of expert testimony is within the discretion of the trial court. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). A decision on such a question will not be disturbed unless a court abuses its discretion. *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826, 221 USPQ 568, 573 (Fed.Cir.1984). We conclude that appellants have not shown an abuse by the district court and thus we will not vacate the decision on this ground. We are unpersuaded that the court erred in holding that testimony concerning the drafting of claims to avoid prior art would not have been of any benefit to the jury.

Appellants argue that the court erred in awarding damages for unjust enrichment based on a contractual transfer of know-how and a trademark to which appellee had no rights. ADI's claim for unjust enrichment was based upon New York law, and, on appeal, the scope of review is limited, *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 79, 230 USPQ 409, 416 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). "The granting of equitable relief lies within the sound discretion of the trial court, so long as that discretion is exercised in accordance with the applicable established precedents." *Indyk v. Habib Bank, Ltd.*, 694 F.2d 54, 57 (2d Cir.1982). Appellants have not shown that the court erred in concluding that the jury had substantial evidence from which it could find that appellants were unjustly enriched under New York law. We thus will not disturb that conclusion.

Appellants also argue that the court erred in awarding treble damages and attorney fees; they assert that they had a good faith belief that ADI's patents were invalid based on the fact that the patent examiner initially rejected ADI's patent applications on reexamination. However, the jury found by clear and convincing evidence that appellant's infringement was willful. Awards of increased damages and attorney fees are within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547–48, 221 USPQ 1, 8 (Fed.Cir.1984).

The district court, in its March 10, 1990, oral decision, concurred with the jury's finding of willfulness, clearly rejected appellants' argument of good faith belief in the invalidity of the patents, and concluded that appellants either committed perjury or misled the court. Accordingly, the court trebled appellee's damage award and also awarded attorney fees. The district court carefully considered the conduct of appellants both before and during the litigation. Appellants concede that they only sought the opinion of general, not patent counsel with regard to validity and infringement of the patents; they have not demonstrated that this procedure led to a good faith belief that the patents were either invalid or not infringed. We find no abuse of discretion by the court. Finally, it is clear that initial rejection by the Patent and Trademark Office of original claims that later were confirmed on reexamination hardly justifies a good faith belief in the invalidity of the claims.

Appellant Goldstein was the assignor of the '535 patent and, under *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1226, 6 USPQ2d 2028, 2031 (Fed.Cir.), *cert. dismissed*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 978 (1988), the court found that appellant and his privies were precluded from contesting the validity or enforceability of the patent. Appellants argue that the district court erred in concluding that testimony concerning the assignment of the '535 patent should have been precluded because they are also licensees under the patent. They assert that, under *Lear, Inc. v. Adkins*, 395 U.S. 653, 670, 89

S.Ct. 1902, 1911, 23 L.Ed.2d 610 (1969), a licensee can contest validity and enforceability.

This argument is not persuasive. That a patent assignor takes back a license does not free him from the fact that he previously sold the patent for value. As the district court concluded, the assignor, in challenging the patent, is still asserting that what he sold is worthless, and the existence of a license back does not alter that fact. This court, in *Diamond Scientific*, distinguished *Lear* by explaining that:

> The public policy favoring allowing a licensee to contest the validity of the patent is not present in the assignment situation. Unlike the licensee, who without *Lear* might be forced to continue to pay for a potentially invalid patent, the assignor who would challenge the patent has already been fully paid for the patent rights.

848 F.2d at 1224, 6 USPQ2d at 2030. We consider an assignor-licensee to be in a different situation from that of an ordinary licensee and view *Diamond Scientific* to be applicable even when there is a subsequent license back to the assignor. Thus, the district court did not err in concluding that such testimony should have been precluded.

We have considered all of appellants' laundry list of arguments and find them all unpersuasive.

## CONCLUSION

Since we conclude that appellants have not demonstrated that prejudicial legal error occurred in the conduct of the trial after having failed to move for JNOV or seek a new trial, we affirm the judgment appealed from.

AFFIRMED.